HOOK v. MERCANTILE TRUST CO. OF NEW YORK et al.

(Circuit Court of Appeals, Seventh Circuit. October 8, 1898.)

No. 495.

1. RAILROAD MORTGAGE—PROPERTY INCLUDED—EVIDENCE OF OWNERSHIP.

The fact that a railroad company entered into possession of terminal property, the title to which was in another, and made improvements thereon, does not tend to prove ownership of the property in fee by the company in favor of its bondholders without proof of a contract for the trans-

for of the title, and where the possession is as readily attributable to a
lease or license.

2. DECREE—VALIDITY—AMENDMENT AFTER TERM.

St. Ill. (1 Starr & C. Ann. St. p. 409) c. 22, § 37, providing for the amendment of pleadings by leave of court, gives no authority for amendment
after the term at which a final decree has been entered; and a second
decree, entered on the petition of a stranger to the first, setting aside the
decree entered at the previous term, no notice to the other parties of such
proceeding being shown by the record, is void on its face.

Appeal from the Circuit Court of the United States for the Southern
District of Illinois.

The Chicago, Peoria & St. Louis Railway Company (which for brevity will
be here called the "Peoria Company") was organized on February 7, 1887,
and became the owner by consolidation of the lines of railroad theretofore
known as the Peoria, Pekin & Jacksonville, extending from Jacksonville
through Havana to Pekin, and the Springfield & Northwestern, extending
from Havana to Springfield. This road, the Litchfield, Carrollton & Western, the Louisville & St. Louis, and the Jacksonville Southeastern were operated under the control of William S. Hook, as president or general manager,
as one system, known as the Jacksonville Southeastern Line, and books were
kept in that name of the accounts of the various corporations concerned.
On March 1, 1888, the Peoria Company executed a mortgage in the form
of a trust deed to the Mercantile Trust Company to secure bonds to the
amount of $1,500,000; on July 15, 1889, it executed another mortgage to the
Central Trust Company, as trustee, to secure first consolidated mortgage
bonds, so called, to the amount of $1,041,000, to enable it to redeem prior
bonds, and to discharge obligations incurred in the acquisition and construction of its lines, one of which was described as terminating at Jacksonville,
and one to be constructed from Litchfield to East St. Louis; and on June
1, 1891, executed to the Metropolitan Trust Company, as trustee, a third mortgage, covering all its lines, one of which was described as "terminating in
the city of East St. Louis," to secure bonds to the amount of $2,500,000.
There having been default in the payment of interest coupons of each series
of bonds, suits for foreclosure were brought by the respective trustees, by
the Mercantile Trust Company on September 21, 1893, and by the other companies on later dates, and on October 26, 1893, the three suits were consolidated under the title of the first. By subsequent amendments and supplemental bills, William S. Hook, Mary B. Hook, and Marcus Hook were made,
parties defendant; and it was alleged as ground for relief against them that
certain rolling stock, rights of way, and depot grounds, including the
terminals at East St. Louis and Jacksonville, which are the subjects of controversy on this appeal, were acquired for and belonged to the defendant
railway company, and were subject to the several mortgages sued on,
though the title thereto appeared to be in William S. Hook, Mary B. Hook,
and Marcus Hook. These defendants answered separately to the effect that
the terminal property at East St. Louis was conveyed by the Wiggins Ferry
Company to William S. Hook in the year 1882, before the Peoria Company
was organized or thought of; that, at the time of the purchase, Marshall P.
Ayers and Augustus E. Ayers were connected in railroad enterprises with
William S. Hook, and had purchased the terminal property, together with
other pieces of property, partly in the name of William S. Hook, and partly
in the name of Marshall P. Ayers; that on December 29, 1886, an account was
taken, and it was found that the sum of $30,871.56 was due and owing to M.
P. Ayers & Co., bankers at Jacksonville, Ill., for moneys advanced by Augustus E. and Marshall P. Ayers upon the purchases made, including the
property at East St. Louis; that on that date William S. Hook, Marshall P.
Ayers, and Augustus E. Ayers executed to M. P. Ayers & Co. a promissory
note for the amount stated, and at the same time, or soon thereafter, executed a declaration of trust, which included the properties in question, to
secure the payment of the debt evidenced by the note; that pending a suit
in the circuit court of Morgan county, Ill., to subject the properties to sale

as the property of the Jacksonville Southeastern Railway Company upon an execution against that company, Ayers & Co. transferred the note and the security therefor to William S. Hook, in consideration of the payment by him of the amount of the debt, and William S. Hook in turn transferred the same to Mary B. Hook, in consideration of the advancement by her to him of the sums so paid; and that in that suit the declaration of trust was adjudged to be valid, and to constitute a lien prior to the lien of the execution of the complainants in the suit, and it was ordered that the property be sold and the proceeds of the sale applied first to the discharge of that lien. Besides pleading the facts stated, and claiming that the decree so rendered was an estoppel against the Peoria Company, and against all claiming under that company, which, it was alleged, acquired possession pending the suit, the appellant, Mary B. Hook, set up the same facts in a cross bill, and, by a supplemental bill, showed that a sale had been made, by virtue of the decree, to her, and that on the expiration of the time allowed for redemption she had received a deed of conveyance. It was alleged in the answer of each of the defendants and in the cross bill of appellant that the properties in dispute were not purchased for, nor an agreement ever made for the sale thereof to, the Peoria Company, and that the possession of that company had begun and been maintained under an agreement of lease at an annual rental of $2,000, which, however, since 1893, had not been paid. She prayed an adjudication of her title and a decree for unpaid rent.

Issues having been joined by replications in the usual form, the court, on July 10, 1895, entered a decree of foreclosure and sale, reserving "the remaining undisposed of claims, issues, and equities raised by the answers of the defendants William S. Hook, Mary B. Hook, and Marcus Hook," and of other parties mentioned, for further consideration and adjudication, unaffected by the sale, which, however, by the terms of the decree, was to "include all and singular the right, title, and interest of the defendant railway company, and of the respective complainants as mortgagees in and to the property claimed by any of the defendants." Sale was made, reported, and confirmed, and deed ordered, executed, reported, and approved. Upon the reserved issues the master to whom the reference was made reported the evidence and his conclusions. In respect to the East St. Louis property he found the facts to be substantially as stated in the answer and cross complaint of the appellant, and reported his conclusion that the title was hers, and had never belonged to the Peoria Company. The Jacksonville property, he reported, had been purchased by Hook and Ayers in 1882, 1883, and 1884, had been included in the declaration of trust, and had taken the same course as the property in East St. Louis, now being in the name of Mary B. Hook. The exceptions of the complainants to these parts of the report the court sustained, and declared a finding of its own, "that subsequent to the first day of March, 1888, and prior to the 21st day of September, 1893, the defendant William S. Hook, for and in behalf of the defendant the Chicago, Peoria and St. Louis Railway Company, acquired for use, in connection with the said line of railway and the business thereof, certain parcels of land and rights of way over the same; that the parcels of land and rights of way thus acquired were purchased with funds belonging to said defendant railway company, and the title thereto taken in the name of said William S. Hook; that the parcels of land and rights of way thus acquired are more particularly described as follows." In the description which followed were included the terminals at East St. Louis and Jacksonville, and a decree was accordingly entered that those properties belonged to and should be conveyed by the appellant, or, in default thereof, by the master, to the Chicago, Peoria & St. Louis Railroad Company, which, by the foreclosure sale and the conveyance thereunder made, had succeeded to the rights of the Peoria Company.

Isaac I. Morrison, Thos. Worthington, and Samuel P. Wheeler, for appellant.

Bluford Wilson, for appellees.

Before WOODS and SHOWALTER, Circuit Judges, and BAKER, District Judge.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

The finding of the court that the two properties now in dispute, the terminals at East St. Louis and Jacksonville, were acquired by William S. Hook between March 1, 1888, and September 21, 1893, for the Peoria Company, and paid for with its money, is not justified by the evidence; and we find in the record no sufficient ground for the contention that that company ever acquired title to, or an interest other than leasehold in, either of those properties. The deed by which the property in East St. Louis was conveyed to Hook in 1882, five or more years before the organization of the Peoria Company, contains, it is true, a provision, which perhaps amounts to a condition subsequent, that the premises shall be used solely for railroad purposes; but that condition is just as well satisfied by occupation for railroad purposes under a lease or license as under an absolute title, and therefore has no force as evidence of the title now asserted. Other circumstances relied upon are hardly more relevant or significant. It does not tend to show title in the Peoria Company if it be true that, under their contract with the Jacksonville Southeastern Company, M. P. Ayers & Co. were bound, in the first instance, to have furnished at their own individual expense the right of way, terminals, and other real estate necessary for the use of the latter company. While there is evidence that the larger part of the purchase price of the East St. Louis property was paid with money taken from the treasury of the Jacksonville Southeastern Company, and there is, perhaps, some ground for the contention that the amount so expended was afterwards made good to that company out of the earnings of the Peoria Company, there is no direct evidence that the purchase was made for the Jacksonville Southeastern Company; and, if a resulting equity in favor of that company were conceded, there is no proof whatever of an agreement or intention at any time that its right should be transferred to the Peoria Company. The proof of reimbursement to the Jacksonville Southeastern Company and to W. S. Hook of the sums paid for the properties out of the earnings of the Peoria Company is found in balances in favor of the latter company against the other, and against Hook, shown in his personal accounts and in the clearing-house accounts, so called, kept in the name of the "Jacksonville Southeastern Line." There is, however, no hint in the evidence that, in consideration of such reimbursement or upon any consideration whatever, the Jacksonville Company agreed to part with its interest, or that upon that or any other consideration W. S. Hook agreed to convey the legal title, confessedly in him, to the Peoria Company; and it adds nothing to the argument if it be conceded to have been the intention of W. S. Hook and his associates from the first to extend their system of railroads to East St. Louis. Their system was composed of several lines owned by companies which, though their stockholders may have been largely the same, must be recognized as distinct legal entities, whose respective rights are no more to be confused than if they were so many natural persons.

The assertion that, during the interval between the purchases in 1882 and the "actual dedication" of the terminals to the uses of the

Peoria Company, "the title to the property was held upon the books of the Jacksonville Southeastern Railway, which was the clearing house for the several roads in the system," is in itself of uncertain meaning, and is supported by considerations which do not tend to establish title in the Peoria Company. Real estate is not transferred by one person or private corporation to another by dedication, nor by a transfer of possession, unless done in pursuance of a contract of sale followed by the making of improvements necessary to take the contract, if in parol, out of the statute of frauds. There is no evidence tending to show a contract for the sale or transfer of title, and the possession and uses to which the properties were put by the Peoria Company may as well be attributed to a lease or license as to a contract for the title. The statement that the title was held on the books of the Jacksonville Southeastern Railway is an impossible proposition, and, as already explained, those books show nothing tending to establish the title asserted.

Passing the foregoing considerations, it is urged that the claim of the holders of the bonds of the Peoria Company to the terminal properties in dispute "is of the most positive and conclusive character." But the reasons for this statement are not convincing. It is clear enough that the after-acquired property clauses of the first two mortgages foreclosed and the description of existing lines contained in the last were such as to include whatever interest the mortgagor company had or afterwards acquired in the terminal properties at Jacksonville and East St. Louis; but those properties not being specifically described in any of the mortgages, and the title of record being in Hook or Ayers, the recording of the mortgages did not operate as notice to the world of the assertion by the mortgagor of a title or interest adverse to the title apparent of record. Indeed, according to the master's supplemental report the Peoria Company did not enter into possession of the disputed property at East St. Louis until July 1, 1891, one month after the date of the last mortgage. It was therefore not only not "vital," it was not material, "to note" that the mortgage of March 1, 1888, antedated the declaration of trust made on April 23, 1888, and with the mortgage to the Central Trust Company was recorded in the counties of Morgan and St. Clair more than a year prior to the recording of the declaration of trust; nor that those mortgages were executed and recorded long prior to the institution of the legal proceedings in the circuit court of Morgan county. Those proceedings and the declaration of trust it will be necessary to consider further along, but they have no bearing upon the question whether the Peoria Company at any time acquired title to or an interest in the terminal properties in dispute.

It is further asserted on the "testimony of Hook and others, and the contemporaneous record," that the Peoria Company had entered into exclusive possession of the properties, and had exercised such control and possession as to perfect its title as against Hook and all claiming through him. This implies that that company, by contract or in some mode, had acquired an interest or right which might be made a perfect title; but there is no proof of such imperfect title, and without it, and without the aid of the statute of limitations, mere

possession and control, though adverse, have no tendency to perfect or to create title to real estate. In this connection stress is laid upon a letter of W. S. Hook, written on March 3, 1892, to Hatch & Foote, brokers of New York, who were employed to sell the three series of mortgage bonds executed by the Peoria Company, and upon their testimony that they understood that the company owned the terminals at East St. Louis; but it is enough to observe that that letter does not say nor justify an inference that the Peoria Company owned the property in dispute, and it does not appear that any purchaser of bonds was so told or understood, or bought in the belief that the terminal property was covered by the mortgage. The public record to which all were bound to look, unless excused from so doing by the conduct of the apparent owner of record, showed that the title was in Hook, and the beliefs of Hatch & Foote, not communicated to a purchaser of bonds, were of no consequence.

It was shown, too, that in fire insurance schedules the property had been described as "East St. Louis, Illinois, freight depot and platform, 1 story (title in W. S. Hook, but is R. R. property)." That was literally true, and, whoever was responsible for it, was no justification for an inference that the title to the land was other than it appeared to be of record. The possession of the Peoria Company, and the improvements which it made, as already stated, are attributable to a lease or license, and, without proof of an agreement to transfer the title, do not tend to prove ownership of the fee by that company.

The remaining proposition—that, the Peoria Company being insolvent in 1893, Hook, as president and director, was bound as a trustee to handle and account for its moneys honestly, and was estopped as against the bondholders and general creditors from preferring himself or his relatives in any way—may be true, but its tendency to establish the title of that company to the particular pieces of real estate in dispute is not perceived. In the absence of conveyance or contract therefor, the ownership of land cannot be affected by the state or changes in the state of individual accounts. Our conclusion is that the court erred in its finding and decree that the Peoria Company had ever acquired in the properties in question an interest other than a leasehold which it could mortgage.

The conclusion stated makes it necessary to consider whether upon her cross bill the appellant is entitled to a decree for unpaid rents. If she became the owner of the property, as she claims to have done, by force of the sale upon the decree of the Morgan circuit court, she is entitled to that relief; but not if she can be regarded as having obtained only the right or lien created by the declaration of trust in favor of M. P. Ayers & Co. We are of opinion that she did not acquire title by force of the proceedings in the suit in the Morgan circuit court. That suit was brought by Kennedy and others, trustees in a mortgage executed by the Jacksonville Southeastern Railway Company, to subject the terminal property at East St. Louis to sale by virtue of an execution issued upon a judgment at law against the Jacksonville Southeastern Railway Company, on the theory that the property was bought for and with the money of that company and therefore belonged to it. Besides the railway company, William S. Hook, Marshall P.

Ayers, and Augustus E. Ayers were made defendants; it being averred in the bill on information that they claimed to have advanced individual moneys to the amount of $30,000 upon the purchase price of the properties described and were holding the titles thereto to secure the repayment to them of that sum.    Process was served on all of the defendants, and the Ayers, by themselves and also jointly with Hook, answered, setting up the declaration of trust as a prior lien upon the property for the amount of the debt evidenced by the note to M. P. Ayers & Co., but not disputing that subject to that lien the property belonged in equity to the Jacksonville Southeastern Railway Company, and was liable to sale under the execution which the complainants had caused to be levied upon it.    A cross bill was also filed by the defendants Marshall P. Ayers and Augustus E. Ayers jointly with John A. Ayers, who with them composed the firm of M. P. Ayers & Co., setting forth the same facts, and implying the same theory. The railway company did not answer, and was not defaulted.    The cause was continued from term to term until the May term, 1893, at which the court entered a decree commencing with the recital, "And now, on this 26th day of May, A. D. 1893, comes the parties to this suit, by their respective solicitors," etc.    If, as has been asserted, there was in fact but one solicitor in the case, the verb singular was not far wrong.    The substance of the decree is a finding and adjudication, according to an agreement filed, of the relative rights of Hook and of M. P. and Augustus E. Ayers in the note secured by the deed of trust; it being adjudged that Hook, on payment of the sum of $12,813.43, with interest, in addition to other sums already paid, should be subrogated to the right, title, and interest of Marshall P. Ayers and Augustus E. Ayers in and to the premises described in the declaration of trust, and that, upon payment to them of that sum with interest, they should execute to Hook a deed of quitclaim for the premises; and, upon a finding that judgment had been recovered by the complainants and executions thereon issued and levied as alleged in the bill, it was decreed that the master in chancery of the court "proceed to sell all and singular the right, title, and interest of the Jacksonville Southeastern Railway Company in and to the real estate hereinafter described, subject, however, to the debt of the said William S. Hook, as subrogated in this decree, and of [to] the debt provided for yet unpaid to the said M. P. Ayers & Company, as found in said stipulation," etc.    The decree is a final one, and contains no reservation or provision for further proceedings, except "that the master report his proceedings under this decree to this court."    After the entry of this decree no further step was taken until the next November term of the court, at which, on December 26, 1893, Mary B. Hook presented a petition, entitled in the cause, in which she set out at length the previous pleadings, proceedings, and the agreement on which the finding and decree were based, and alleged full payment by William S. Hook to the Ayers of the remaining sum due them, and that William S. Hook, having so acquired the entire interest, had assigned the debt and the declaration of trust to her in consideration of moneys to the full amount of the debt advanced by her to enable him to make the purchase of the Ayers.    Without notice to any of the parties to the

original suit, and without recital of appearance by any of them, and apparently without proof of the consent of any of them, the court permitted this petition to be filed, and thereupon, on the same day, entered a decree, whereby, after reciting the previous proceedings at length, it was ordered that the decree entered "by consent" at the preceding May term be set aside; that "this cause stand upon the docket in the name of the original complainants and against the respondent Mary B. Hook"; and then, after a finding "that the complainants have a right to proceed with the sale of said property to satisfy said executions, but subject to all the rights vested in the said Mary B. Hook, as hereinbefore found," proceeds to order, adjudge, and decree that the Jacksonville Southeastern Railway Company pay to the master for the use of Mary B. Hook the sum of $43,939.40, with interest, and $61,475, with interest, for the use of the complainants, and that in default of such payments within 10 days the master proceed "to sell all and singular the real estate described in the bill in this cause," and out of the proceeds pay in their order the costs, the sum due to Mary B. Hook, and that due to the complainants, and the remainder, if any, turn over to the Jacksonville Southeastern Railway Company.

For a justification of these proceedings, upon the petition of the appellant, reference is made to section 37, c. 22, St. Ill. (set out in a footnote)[1]; but no authority will be found there for such proceedings after final decree, begun and prosecuted, as they were, without notice to or appearance by the parties, and after expiration of the term of court at which the decree was rendered. On its face, therefore, the decree under which the appellant claims title was void as against all the parties to the original suit and decree, and therefore could be of no avail to her in the present litigation. Whether effect might be given to the second decree by proof that it was in fact entered upon notice to or with the knowledge or consent of the original parties is a question which does not arise upon this record. There being no proof that the title of the premises in question is in the appellant, her present demand for the recovery of unpaid rent must be denied. Whether there was in fact a lease by W. S. Hook to the Peoria Company of the terminal grounds at East St. Louis, and what were its terms; whether the declaration of trust was valid, and constituted a lien upon the properties described in it; what was the amount of the lien, and does it belong to the appellant; what is the force of either or both of the decrees of the Morgan circuit court; and incidental questions,—need not be, and are not now, considered. The decree below, in so far as it adjudged the two terminal properties in

[1] Section 37. "The court may extend the time for answering, replying, pleading, demurring, or joining in demurrer, and may permit the parties to amend their bills, pleas, answers and replications, on such terms as the court may deem proper, so that neither party be surprised nor unreasonably delayed thereby; and no amendment shall be cause for a continuance, unless the party to be affected thereby, or his agent or attorney, shall make affidavit that, in consequence thereof, he is unprepared to proceed to trial of the cause at that term, and that he verily believes that if the cause be continued such party will be able to make such preparation." 1 Starr & C. Ann. St. Ill. p. 409, c. 22.

question to have belonged to the Peoria Company, and to have come under the lien of the mortgages executed by that company, is reversed, at the costs of the appellees, and the cause remanded for further proceedings not inconsistent with this opinion.

